## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**ANDREA LEIGH DOUGHERTY,**
    **Plaintiff,**

**v.**                                                    **No:   5:05cv82/MCR/MD**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**
        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Dougherty's application for Supplemental Security Income (SSI) benefits under Title XVI of the Act.**

**Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.**

## PROCEDURAL HISTORY

**Plaintiff filed an application for SSI benefits on August 15, 2002.  Although she claimed to have been disabled since January 1, 1998, she could not be entitled**

to SSI benefits for any date prior to her application.  Accordingly, the relevant period for determining disability is from August 15, 2002 until the date of the ALJ's decision, September 13, 2004.  Her application was denied initially and on reconsideration and she requested a hearing before an Administrative Law Judge (ALJ).  A hearing was held on July 13, 2004 and the ALJ rendered an unfavorable decision on September 13, 2004.  Plaintiff sought review from the Appeals Council and submitted new evidence (Tr. 213-223), but the Appeals Council declined review, making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court.  *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff has severe impairments of seizure disorders and affective mood disorders but that she did not have an impairment or combination of impairments listed in or equal to an impairment listed in Appendix 1, Subpart P, Regulations No. 4; that her alcohol abuse was not severe; that her subjective complaints were not credible; that she had the residual functional capacity to perform unskilled medium work; that she had done no past relevant work; that she was a young person with a high school education but with no transferrable skills; and that using Rule 203.28 as a framework for decisionmaking, plaintiff was not under a disability as defined in the Act (Tr. 28-29).

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence.  *Falge, supra*.  The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is

premised upon correct legal principles.  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).  In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.  *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted).  Findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

 A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps.  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or

equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner.  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

In 1999 plaintiff was having problems with vaginal bleeding, and her treating gynecologist, Orlando Muniz, M.D., recommended a hysterectomy (Tr. 121-122). Plaintiff was admitted to the Marianna, Florida hospital on August 31, 1999 and discharged on September 2, 1999.  Her admitting diagnosis was abnormal uterine bleeding, and a hysterectomy was performed without difficulty on August 31, 1999. When the plaintiff awoke her mother was with her, and they reported that she had suffered a petit mal seizure that lasted for up to five minutes.  There is no record that any hospital personnel observed the seizure.

Plaintiff was examined in consultation in the hospital by James Gordon, M.D., a neurologist, who noted that plaintiff was on Wellbutrin in the non-sustained release form and drank six beers daily.  Plaintiff's mother gave a history of some seizures when plaintiff was an infant but none since.  On physical examination there was some tremor in plaintiff's hands but her neurological exam was otherwise

unremarkable.   An EEG was performed on September 2, the same day as Dr. Gordon's consult, and was read as having no significant abnormalities, although the interpreter noted that lack of propagated spike wave discharges did not rule out the possibility of an underlying convulsive disorder (Tr. 104).  Dr. Gordon concluded that non-sustained release Wellbutrin combined with alcohol significantly increases the possibility of seizure and indicated that plaintiff should be started on Dilantin (Tr. 102-103).  There is no record that plaintiff ever took that medication.

Before she was admitted to the hospital plaintiff was given a chest x-ray which revealed mild thoracic kyphoscoliosis but no enlarged heart.  The radiologist's opinion was that plaintiff's lungs were a little inflated but that this could be due to good inspiratory effort.  There was no definite evidence of chest disease (Tr. 107).  On plaintiff's first return visit to Dr. Muniz after her hospitalization, on September 8, 1999, he noted simply that plaintiff was status post hysterectomy and told her to return to the office in four weeks, sooner if she had any problems (Tr. 120).  She returned on October 6, 1999 doing well.   Dr. Muniz again noted status post hysterectomy but this time noted alcoholism based on liver enzyme readings (Tr. 119).

The next entry in the medical record is dated approximately a year later, when on September 15, 2000 plaintiff went to her local county clinic.  She told the nurse practitioner that she had suffered a grand mal seizure on August 31, 2000 but did not seek medical treatment since she had a seizure in the hospital a year earlier and no medication had been given.  She said that she believed she was having more seizures while she slept because she was waking up sore all over and disoriented. The assessment by the nurse practitioner was possible seizure disorder.  There was no indication of any medication being prescribed (Tr. 133).

Six months later plaintiff came under the care of Chris Cosper, M.D.  On April 11, 2001 she was noted to be a new patient complaining of grand mal seizures,

headache, allergic rhinitis, acute sinusitis and depression.  Her chief complaint was headaches.  Her physical examination was essentially normal and she was given some sample medications and told to return in one month (Tr. 226-227).  She returned on May 10, 2001 complaining of fatigue and swelling in her face over the previous ten days.  She also reported intermittent headaches and that she was "stressed out."  Her physical examination was normal and she was told to return to the clinic in one month or sooner if needed (Tr. 223-225).  As will be discussed later, plaintiff did not return to Dr. Cosper until more than two years later, on August 14, 2003.

In the meantime, she continued to be treated at the local county clinic.  Nearly a year after she last saw Dr. Cosper, on April 25, 2002, she reported to the clinic nurse practitioner that she had fainted but was unsure how long she was out.  She again gave a history of seizures but said she had never been put on seizure medication.  She also reported that four days previously she had an episode of shaking all over without loss of consciousness which was witnessed by her mother.  She reported drinking six to eight beers per day and smoking two packs of cigarettes a day.  She indicated that she did not work because of anxiety and severe leg pain caused by varicose veins.  The nurse practitioner assessed anxiety and depression and counseled plaintiff on the need to decrease her alcohol consumption (Tr. 131-132). She also prescribed Zoloft.  The clinic notes also indicate that on May 21, 2002 plaintiff was called on the telephone and told to discontinue her intake of alcohol due the results of recent blood tests, presumably elevated liver enzymes (Tr. 131).  On May 9, 2002, she returned to the clinic.  She was calm and able to relate information with ease.   The nurse practitioner's impression was depression, elevated liver enzymes, alcohol abuse and leg pain.  Plaintiff was counseled on diet, exercise, vitamins, and taking her medication (Tr. 129).  Plaintiff returned on July 22, 2002 for follow-up on her lab work.  She indicated that she was having two anxiety

attacks per day, that she was drinking alcohol at almost the same level as before and had stopped using her Zoloft.  The nurse practitioner's impression was depression and anxiety with alcohol abuse.  She was again counseled to continue working on her alcohol abuse problem and to restart her medication (Tr. 128).  On August 21, 2002, plaintiff returned to the clinic stating that she was having panic attacks, insomnia, headaches, crying spells and depression.  She indicated that her anxiety was severe and she was fearful of medications that could cause seizures.  Her physical examination was essentially normal and the nurse practitioner's impression was anxiety and depression with alcohol abuse and abnormal liver enzymes.  Plaintiff was counseled as before (Tr. 127-128).  On December 2, 2002 the nurse practitioner filled out a questionnaire for the Office of Disability Determinations.  She indicated that plaintiff suffered from a mental impairment that significantly interfered with her daily functioning, and that she had been referred for treatment at the Life Management Center but did not follow through.  The nurse practitioner indicated that plaintiff's main diagnosis was depression complicated by alcohol abuse and severely elevated liver enzymes.  She also noted that plaintiff had a loss of 10-20˚ in range of motion due to a spinal deformity but no sensory reflex deficits.  Her grip strength was three out of five bilaterally with poor fine dexterity, and she could not squat but could walk on her heels and toes (Tr. 125-126).

On April 14, 2003, plaintiff was seen by Gurprit Sekhon, M.D., for a follow-up visit, although there is no indication in the administrative record as to when plaintiff was first seen by Dr. Sekhon.  The doctor noted that plaintiff's past medical history included alcohol abuse, excessive smoking, chronic headaches and lack of sleep. She reported drinking five to eight cans of beer per day and had tried to quit in the past for as much as a couple of weeks, but went back to drinking.  Her physical examination was essentially normal.  Dr. Sekhon's assessment was alcohol abuse with a history of domestic violence.  Plaintiff had repeatedly been asked to quit

drinking alcohol and had been given numbers for support groups and Alcoholics Anonymous.  Dr. Sekhon prescribed folic acid and thiamine.  He also noted possible migraine headaches (Tr. 177).

Plaintiff returned to Dr. Cosper on August 14, 2003 after a more than two year absence.   His diagnosis was anxiety, continuous alcohol abuse, depression, alcoholic cirrhosis and headaches.  Plaintiff's physical examination was essentially normal.  She was again advised to stop drinking and was given a treatment option but refused (Tr. 221-222).   She returned to Dr. Cosper on October 24, 2003 complaining of sinusitis (Tr. 219-220) and returned on November 5, 2003 complaining of ear pain.  Dr. Cosper attributed this to tobacco abuse and bronchitis (Tr. 217-218).   Plaintiff returned to Dr. Cosper on November 20, 2003 again complaining of sinusitis (Tr. 215-216).

Plaintiff's last visit to Dr. Cosper was on April 29, 2004.  Her complaint was anxiety.  Dr. Cosper diagnosed headache, alcohol abuse and chronic obstructive pulmonary disease (COPD).   Her physical examination was essentially normal. Plaintiff was again advised to stop drinking and was offered a treatment option but again refused.  She was also advised to quit smoking (Tr. 213-214).  On July 10, 2004 Dr. Cosper filled out a mental impairment questionnaire in which he diagnosed depression, alcohol abuse and epilepsy.  For treatment response he indicated that plaintiff refused to quit alcohol and smoking and indicated that her prognosis was poor.  In evaluating her mental abilities to do unskilled work, he indicated that she was unable to meet competitive standards in the area of regular attendance, sustaining an ordinary routine, completing a normal workday, accepting instructions and getting along with co-workers.   He further indicated that she was mentally unable to do semi-skilled or skilled work (Tr. 201-206).  Dr. Cosper also filled out a physical capacities evaluation form in which he indicated that plaintiff could sit for two hours at a time and stand or walk for one hour at a time and that she could sit

for seven hours during a workday and stand for one hour.  He also indicated that she could frequently lift up to five pounds, that she could use her hands and arms except for fine manipulation and could use her legs to operate controls, that she could never climb and could occasionally bend, squat or crawl.  He also noted that there were no restrictions involving unprotected heights, being around moving machinery, driving an automobile or being exposed to dust, gas and fumes, and there were mild restrictions in exposure to marked changes in temperature and humidity (Tr. 207).

Plaintiff was also examined at the request of the Office of Disability Determinations by two consulting specialists.  The first, Barry Funkhouser, Ph.D., a psychologist, examined the plaintiff on December 17, 2002.  Plaintiff told Dr. Funkhouser that she had a long history of mental health treatment, including psychiatric hospitalization for five weeks at age 17 after an overdose attempt and nine days of hospitalization at age 23 for a nervous breakdown.  She was also followed by a psychiatrist in Dothan, Alabama for several years, according to her history.  None of the several antidepressants she had tried had been particularly helpful.  The nurse practitioner at the county clinic had placed her on Zoloft but it did not help and she could not afford the prescriptions.  She reported tightness in her chest and shortness of breath, inability to sleep, arthritis, migraine headaches, varicose veins and a seizure disorder.  She stated that she had suffered from grand mal seizures for the last three years and that her last seizure had occurred in October 2002.  She denied illicit drug use but described an extensive history of alcohol abuse.  When asked how much she was drinking she replied "too much."  She estimated that she drank six to eight beers each night, sometimes more, because it helped to calm her down and helped her to sleep.  She had been drinking at this level for the past 15 years or so.  She also noted that her first seizure occurred when she had been forced to stop drinking because she was medically hospitalized.  She did not appear to be intoxicated at the time of the examination.

She reported on her daily activities that she lived near her parents' home and saw her parents every day to assist them with various activities such as housecleaning. She spent much of the day taking care of her many animals, and did laundry and cleaned up around her house.  She also enjoyed doing yard work during the summer and did yard sales as well.  She indicated that "I don't get bored, I've got plenty to do."  Dr. Funkhouser's clinical impression was depressive disorder with significant anxiety component and alcohol dependence.   He indicated that her ability to concentrate and her memory were both intact but that there would be a substantial improvement in her mood problems if she were to address her alcohol dependence (Tr. 147-150).

Plaintiff's other consultation was with Sam Banner, D.O., which occurred on December 26, 2002.  Plaintiff told Dr. Banner about her seizure disorder, with her last seizure being the first week in October 2002.  She complained of migraine or cluster headaches that occurred daily and that her activity was limited due to her headaches because she had to rest for relief.  She complained of low back pain present for more than ten years and increasing in severity but that she had been unable to get any diagnostic testing due to lack of insurance to evaluate her back pain.  Her physical examination was entirely normal.  She had full range of motion in her extremities and her neck and back, demonstrated no pain, had a normal gait, was able to squat without difficulty and could heel and toe walk satisfactorily.  All muscle groups in the upper and lower extremities had full strength, and there was no sensory loss.  Her reflexes were somewhat slow but leg raising tests were normal, there was no atrophy, and fine and gross motions in both hands were satisfactory. She was able to button and unbutton clothing without difficulty.  Dr. Banner's diagnosis was seizure disorder by history, migraine headaches by history, chronic low back pain by history, and possibly emotional disorder (Tr. 151-154).

**DISCUSSION**

The plaintiff contends that new evidence she submitted to the Appeals Council merits remand.  She further contends that the ALJ erred in failing properly to consider her seizure disorder and in failing to find that plaintiff's thoracic kyphoscoliosis was severe, and that she was disabled from her onset date as a matter of law.  The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.  The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of her physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

      1.   <u>New evidence.</u>

The ALJ's decision was issued on September 13, 2004, exactly two months after the hearing.  Plaintiff appealed the decision to the Appeals Council, and included with her appeal a set of records from Dr. Cosper (Tr. 208-229).  In fact, the records submitted constitute the entirety of Dr. Cosper's records (Tr. 213-229), other than the July 10, 2004 Mental Impairment Questionnaire and Physical Capacities Evaluation that were submitted at the hearing (Tr. 201-208, 233).  Plaintiff contends here that this "new evidence" warrants a remand.  "When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is also subject to judicial review because it amounts to an error of law.  20 C.F.R. §§ 404.970(b), 416.1470(b) . . . .  When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Secretary.  20 C.F.R. § 404.955."  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Thus, "new evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review."  21 F.3d at 1067.  "To review the Appeals Council's denial of review, courts will have to

look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the Appeals Counsel must consider in making its decision whether to review an ALJ's decision. *See* 20 C.F.R. S 404.970(b) ("Appeals Council *shall* evaluate the entire record including the new and material evidence submitted to it if it relates to the period on or before the date of the administrative law judge hearing decision.")." *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998). That does not mean, however, that a reviewing court can consider the new evidence in determining whether the Commissioner's decision was supported by substantial record evidence. For that purpose, the court may look only to the evidence that was before the ALJ at the time he made his decision. *Id.*

Since Dr. Cosper's clinical records (the new evidence) have not been considered by the ALJ, the issue for this court is whether a remand for that purpose is required. A remand for consideration of new evidence pursuant to sentence six of 42 U.S.C. § 405(g)[1] is warranted *if* the claimant shows "that (1) new, noncumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level." *Falge*, 150 F.3d at 1323; *Keeton*, 21 F.3d at 1067; *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986), citing *Cherry v. Heckler*, 760 F.2d 1186 (11th Cir. 1985).[2] To be material, the new evidence must relate back to the original alleged onset date of disability, or at least must relate to the disabilities

---

[1] Remand may occur pursuant to either sentence four or sentence six of 42 U.S.C. § 405(g). *Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). A sentence six remand can occur on the motion of the Secretary before she files her answer for good cause, or, alternatively, upon a showing that there is new material evidence and good cause for the failure to incorporate such evidence into the record.

[2] The Supreme Court has noted a conflict among the circuits as to the judicial standard of review as to this issue. *Sullivan v. Finkelstein*, 496 U.S. 617, 110 S.Ct. 2658, 2664 n. 6, 110 L.Ed.2d 563 (1990). This court must follow the standard set by *Caulder*, 791 F.2d at 875, which reiterated the ruling in *Cherry* that the court determines the materiality of new evidence for purposes of remand in a de novo proceeding as a matter of law.

litigated administratively. *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988).[3] Good cause may be shown, for example, where the evidence did not exist at the time of the administrative decision. *Cherry v. Heckler*, 760 F.2d at 1192. Therefore, if the court finds that the new evidence is noncumulative and material and that good cause has been shown, remand to the Commissioner under sentence six of 42 U.S.C. § 405(g) may be appropriate.

Plaintiff is not entitled to remand on this issue. First, she has not shown good cause for not submitting the evidence to the ALJ. The records in question run from April 11, 2001 through April 29, 2004, all prior to the hearing. At the hearing counsel presented the forms that Dr. Cosper had filled out on July 10, 2004 (Tr. 201-208), and asked:

> ALJ: (sic) . . . And we do have an outstanding request [for Dr. Cosper's records]. And if Your Honor would like those to be submitted, we request additional of 10 days (sic) for those?
>
> ALJ: Well, I'll go on I suppose for the records.
>
> ATTY: Thank you.

(Tr. 235-236). Plaintiff also points to the following colloquy at the conclusion of the hearing:

> ALJ: I have no further questions. Do you have anything further?
>
> ATTY: No, Your Honor.
>
> ALJ: Then we'll close the hearing. I'll issue a decision as soon as possible in as short as possible.

(Tr. 246-47). Plaintiff asserts that the ALJ's response to her request for additional

---

[3] Stated another way, the new evidence must be relevant to a condition existing on or before the ALJ's decision, *Thomas v. Sullivan*, 928 F.2d 255, 260-261 (8th Cir. 1991), or at least before the final decision of the Appeals Council. *See Smith v. Bowen*, 792 F.2d 1547, 1551 (11th Cir. 1986) (Appeals Council may consider new evidence).

time was "unclear," (doc. 13, p. 9-10), and that "it appears that the ALJ did not hold the record open for these records and his decision does not indicate otherwise." (Doc. 13, p. 10). If the ALJ's response to the request was unclear, counsel could have asked for clarification, which she did not do. Moreover, regardless of whether the record was held open, the decision was not issued for two months after the hearing. The court is not willing to interpret the facts as plaintiff contends. What is missing is something only plaintiff can supply: when the records were received from Dr. Cosper, whether there was any difficulty in obtaining them, whether counsel sought additional time for obtaining and submitting the records, and exactly why they were not submitted until the appeal was filed. In short, the answers to any lack of clarity and the uncertainty were and are in plaintiff's hands, and she has offered this court nothing by way of explanation. Other than speculating about what *might* have happened, counsel has not shown any cause, much less good cause.

Second, it is clear that the evidence is not and was not new at the time it was submitted. All the records predate the hearing. Third, plaintiff cannot show that there is a reasonable possibility that the new evidence would change the administrative result. The Mental Impairment Questionnaire was already in the record, but the new evidence adds nothing to it because Dr. Cosper is a general practitioner, not a mental health practitioner. Consequently, his opinions on plaintiff's mental health are entitled to little weight because the regulations provide that the Commissioner gives "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5). The balance of Dr. Cosper's records do not add weight to his opinions. Indeed, the records disclose treatment for various respiratory and sinus problems, and indicate that by history plaintiff complained of seizures and headaches, but Dr. Cosper's emphasis, and his obvious

professional concern, was on plaintiff's alcohol abuse.[4]

Plaintiff cannot meet even one of the three showings necessary to merit remand. *Falge, supra.* For all of the foregoing reasons, plaintiff is not entitled to remand for the ALJ to consider Dr. Cosper's records.

    2.   <u>Seizure disorder.</u>

The ALJ discounted plaintiff's seizure disorder as not disabling. Specifically, he found that the objective evidence of multiple seizures despite medication, or their intensity, was not proven (Tr. 19). Plaintiff argues that this was error, relying first on Dr. Cosper's records. However, those records were not before the ALJ. The only thing from Dr. Cosper were the assessment forms he filled out, and the ALJ discounted them because they were not supported by any records, and because the opinions were in direct conflict with other evidence in the record (Tr. 22).

Plaintiff also argues that the state agency reviewing physicians placed limitations on plaintiff's activities because of her seizures, but although the ALJ

---

[4] This puts plaintiff's argument in perspective. In 1996 Congress enacted Pub. L. 104-121 as part of the "Contract With America." Section 105 provides that as to both disability benefits and SSI claims, "[an] individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." The Commissioner has interpreted the language of the amendment by finding that drug addiction or alcoholism is "material" if the individual would not still be found disabled if alcohol or drug use were to cease. 20 C.F.R. §§ 404.1535, 416.935. The claimant has the burden of proving that she would still be disabled even if she were to stop using alcohol or drugs. *Doughty v. Apfel,* 205 F.3d 1274 (11th Cir. 2001). The ALJ noted this, but found that because plaintiff was drinking only 6 to 8 beers a day, rather than the case she used to drink, and because she appeared to be sober at the hearing and when she was examined by Dr. Funkhouser, plaintiff's alcohol abuse was not severe (Tr. 19).

Plaintiff's argument that the Dr. Cosper's records would likely change the result is incorrect. Dr. Cosper clearly felt that plaintiff's problems were secondary to her alcohol abuse and that 6 to 8 beers a day was an abuse of the substance. Moreover, 6 to 8 beers a day was plaintiff's consistent admission concerning her beer consumption, and every medical provider who saw her urged her to quit. Even at her last visit Dr. Cosper told plaintiff to stop drinking and offered a treatment option, but she refused (Tr. 213). Nothing in the records would support plaintiff's burden of proving that she would still be disabled if she quit drinking. Frankly, the court believes that if the ALJ had seen Dr. Cosper's clinic records, his finding on plaintiff's alcohol abuse would likely have been different, resulting in additional support for the denial of benefits.

The other part of plaintiff's argument on this issue concerns her problems with fatigue. She argues that fatigue is caused by cirrhosis, and that this condition was confirmed by liver enzyme tests in Dr. Cooper's records. The test results are indeed there, but the cirrhosis directly related to plaintiff's alcohol abuse. Again, plaintiff's argument fails.

accepted those physicians' opinions, he did not accept their limitations, nor did he explain why he discounted them.  The reviewing physicians opined that plaintiff was restricted from climbing, exposure to machinery and working at heights.  Plaintiff contends that the ALJ ignored these restrictions.  That is incorrect.  He specifically noted the restrictions, but he did not adopt them (Tr. 22).  He did relate in some detail the numerous facts in the medical record showing that plaintiff's problems generally were unsupported.  For example, he noted that plaintiff had a major credibility problem, because she told Dr. Funkhouser that she was very physically active at home, but said just the opposite at the hearing (Tr. 23, 24).  He also noted that plaintiff claimed, incredibly, that the "fog" of a seizure lasted for months (Tr. 21).

The ALJ's credibility determination is central to this issue.  As the court is well aware, Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, "unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  *Accord* 20 C.F.R. § 416.929; *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir. 1986) (holding that for pain to be considered disabling, there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain). Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain."  *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial

subsidiary fact of the truthfulness of subjective symptoms and complaints").[5]
People with objectively identical conditions can experience significantly different
levels of pain, and pain is more readily treated in some than in others.  "Reasonable
minds may differ as to whether objective medical impairments could reasonably be
expected to produce [the claimed] pain.  This determination is a question of fact
which, like all factual findings by the [Commissioner], is subject only to limited
review in the courts . . . ."  *Hand, supra,* at 1548-49.  It is within the ALJ's "realm of
judging" to determine that "the quantum of pain [or other subjective symptom a
claimant] allege[s] [is] not credible when considered in the light of other evidence."
*Arnold v. Heckler*, 732 F.2d 881, 884  (11th Cir. 1984).   Thus, a physician may be told
by a patient that he or she is in pain or suffers from some other symptom, and the
physician may believe it, but the ALJ is not bound by that.  The evidence as a whole,
including the existence of corroborating objective proof or the lack thereof, and not
just a physician's belief, is the basis for the ALJ's credibility determination.

The ALJ clearly believed little of what plaintiff told him or her doctors.  To pick
the climbing and height restrictions out of the record and say that the ALJ was
required to either adopt or reject them sounds reasonable, but it does not support
a claim of clear error.  Plaintiff cites *Cowart v. Schweiker*, 662 F.2d 731 (11th Cir.
1981) as authority that the ALJ must make clear the weight accorded to each piece
of evidence.   That is true as far as it goes, but that requirement came with a
rationale: "In the absence of such a statement, it is impossible for a reviewing court
to determine whether the ultimate decision on the merits of the claim is rational and
supported by substantial evidence."  662 F.2d at 735.  Thus, the test is not whether
the ALJ discussed each and every notation on each and every piece of paper in the
administrative record.  The test is whether the ALJ'S written decision is sufficiently

---

[5] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

clear and sufficiently complete for meaningful review.  Here, the *Cowart* requirement of giving the reviewing court sufficient information for it to determine whether the ALJ's decision was based on substantial record evidence was met.

Moreover, an ALJ's failure to state the weight given a particular opinion or piece of evidence is subject to harmless error analysis.  In evaluating the necessity for a remand, the court must determine "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982).  There must be a showing of prejudice before it is found that the case must be remanded to the Commissioner for further development of the record. *Graham v. Apfel,* 129 F.3d 1420, 1423 (11th Cir. 1997).  Before ordering a remand, the court must review the administrative record as a whole to determine if it is inadequate or incomplete or "shows the kind of gaps in the evidence necessary to demonstrate prejudice." *Id*.  Any error here was harmless.  Plaintiff relies on the height and climbing restrictions given by the state agency consultants, but ignores the opinion in Dr. Cosper's PCE (which was before the ALJ), in which he placed absolutely no restrictions on plaintiff's working at heights or being around moving machinery (Tr. 207).

Finally, when the plaintiff first complained of a seizure, an EEG was read as normal, and she was never again seen by a neurologist or other specialist for the condition.  The evidence as a whole, viewed in conjunction with plaintiff's almost total lack of credibility, supports the ALJ's finding that plaintiff's seizure disorder was not disabling

3.     Thoracic kyphoscoliosis.

For her last ground for reversal plaintiff argues that the ALJ erred in not finding that her thoracic kyphoscoliosis was severe.  She points to an early x-ray notation (when plaintiff's chest was x-rayed after complaints of chest pain) that

noted *mild* thoracic kyphoscoliosis[6] (Tr. 107), and argues that this is evidence of an abnormal spinal curvature that *may* cause fatigue and *may* cause pain (doc. 13, p. 11).  Plaintiff faults the ALJ for not seizing on this notation as the basis for a *Hand* finding that plaintiff's complaints of back pain were supported by evidence of a medically determinable impairment.  The flaw in plaintiff's argument is that the record is entirely silent on any complaints specific to this x-ray finding.

The x-ray was made in August 1999 at the time of plaintiff's hospitalization and hysterectomy.  However, the condition was not discussed by her treating physician or by anyone else during her hospitalization, and back pain is not mentioned in the hospital records.  Since then, as the ALJ found, there have been "vague and unsubstantiated complaints of leg and back pain" (Tr. 21), but nothing in the record supports the argument that any treating physician considered back pain to be a problem.  The county clinic nurse practitioner noted that plaintiff had some loss of range of motion due to a spinal deformity, but made no mention of back pain, spasm, or sensory or reflex deficits (Tr. 126).  Plaintiff claimed that she had severe back pain in her request for reconsideration (Tr. 89), but she had not pointed to a single instance in the record where she told either a treating physician or a clinic nurse that she had mid-back (thoracic spine) pain.

The undersigned has reviewed the medical record in detail and has found precious little mention of back pain.  A physician who saw plaintiff in 1995 (seven years before her disability application) indicated that she was treated for sinusitis and excess weight, and noted muscle spasms in her back, but without noting whether the spasms were at the thoracic or lumbar level (Tr. 124).  There was no recorded follow-up for this problem.  Plaintiff told Dr. Banner that she had a ten year history of lower (lumbar spine) back pain (Tr. 151).  She did not mention mid-back

---

[6]  Lateral and convex curvature of the thoracic (mid-back) spinal column.  *Dorland's Pocket Medical Dictionary*, 27th Ed.

pain.  Dr. Banner reported plaintiff's physical examination as entirely normal (*id.*), as did virtually every other examining or treating physician.[7]  When asked to identify additional reasons (other than mental) why plaintiff might be restricted from working, Dr. Cosper noted COPD, headaches, seizures, depression, alcohol abuse and hand tremor, but not back pain (Tr. 206).  Even Dr. Cosper's clinic notes (which were not before the ALJ), made no mention of back pain (Tr. 213-229).  Finally, even though she was questioned at length by her attorney at the hearing, plaintiff attributed her inability to work standing for a full hour to "[m]ostly my legs" (Tr. 240), and did not once mention her back in any context (Tr. 232-246).

Plaintiff is attempting to convince the court that the ALJ should have converted a radiologist's reference to a mild deformity in the mid back into a severe condition (somewhere in the back) without the first mention in the medical record or in plaintiff's testimony that the deformity is associated with any symptoms.[8]  Plaintiff is not entitled to reversal on this ground.  The ALJ was not required to consider the spinal deformity for possible severity when it did not appear to be associated with any of plaintiff's symptoms or subjective complaints.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 17th day of March, 2006.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

---

[7] There were subjective complaints, and elevated liver enzymes, but very little else.

[8] If there is any such mention, other than as noted above, the undersigned has not found it.  It is counsel's duty to point to record support, not the court's burden to find it.

*Case No: 5:05cv82/MCR/MD*

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).**